United States District Court
Southern District of Texas
**ENTERED**
November 13, 2020
David J. Bradley, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| SHAPEL WEBBER, | § | CIVIL ACTION NO. |
| Plaintiff, | § | 4:18-cv-04291 |
| | § | |
| | § | |
| vs. | § | JUDGE CHARLES ESKRIDGE |
| | § | |
| | § | |
| UNIVERSITY OF | § | |
| TEXAS MD | § | |
| ANDERSON CANCER | § | |
| CENTER, | § | |
| Defendant. | § | |

**MEMORANDUM AND ORDER
GRANTING SUMMARY JUDGMENT IN PART**

The motion by Defendant University of Texas MD Anderson Cancer Center for summary judgment is granted in part and denied in part. Dkt 29.

1. Background

MD Anderson experienced serious financial deficits in 2016. Dkt 29 at 7. It undertook substantial cost-cutting measures in January 2017, planning an organization-wide reduction in force of eight percent. Id at 10. It then eliminated 778 positions pursuant to that reduction in force. Dkt 30-2 at ¶ 5. One of those positions was that of Plaintiff Shapel Webber. She is an African American woman who worked as a Senior Administrative Assistant at MD Anderson for six years before she was fired. Dkt 38 at 2.

MD Anderson asserts that the members of its evaluation team followed institutional guidance when determining which employees to lay off. Dkt 32-3. The evaluation team consisted

generally of management-level employees, being Kent Postma, Michael Beel, Kyle Taylor, Cammie Williams, Regina Smith, and Elizabeth Lottinger. Dkt 30-2 at ¶ 6. Lottinger attests that the evaluation team concluded that a Senior Administrative Assistant position could be shifted to "other support staff." Dkt 30-2 at ¶ 9. And she attests that Webber was terminated because she was "the only employee in the group on formal disciplinary action." Ibid. That disciplinary action was for making excessive personal phone calls and failing to timely perform assignments. See Dkt 33-4 at 1.

Webber didn't report directly to any member of the evaluation team. She instead primarily interacted with her direct supervisor and an administrative director—Vivian Garcia and Angie Hill, respectively. Dkt 38-3 at 6. She alleges that the reduction-in-force process was simply a pretext for racial discrimination against her. Dkt 38 at 7. She reviews a history of harassing actions taken by Garcia and Hill to support this claim. These include filing unfounded workplace complaints, speaking Spanish intentionally to exclude her, improperly disallowing time off, and making implicitly racial insults. See id at 7–10, 12–14.

Webber alleges that she filed grievance reports against Garcia in January and February of 2016. See Dkt 33-1; Dkt 33-2. She also filed a grievance report against Hill and initiated an EEOC complaint against her in July 2016. Dkt 30-2 at ¶ 10; Dkt 32-4; Dkt 32-5. She alleges that her firing was retaliation for the grievance reports. Dkt 1 at ¶ 5.32.

Webber alleges separate facts in an attempt to show a pervasive hostile work environment. She asserts that she was allowed a shorter lunch break than her Hispanic coworkers. Dkt 38-5 at 2. She asserts that in the absence of a formal time-off policy, her supervisors were less generous with her time-off requests than with others. See generally Dkt 38-4. And she asserts that work discussions were frequently conducted to her exclusion in Spanish. Dkt 38-12 at 7. Webber points to Brittany Thompson, an African American co-worker, as recounting many of the same experiences. Dkt 38-11 at 17. Webber asserts that Thompson resigned after persistent harassment by Garcia and Hill. But this

is unsupported by any specific citation, with Webber instead generally citing the entirety of Thompson's deposition.

Webber brought claims for discrimination, a hostile work environment, and retaliation in November 2018. Dkt 1. She originally brought numerous state-law discrimination claims, but voluntarily withdrew them earlier in this action. Dkt 6. MD Anderson moves after the close of discovery for summary judgment on the three remaining claims. Dkt 29.

2. Legal Standard

Rule 56(a) of the Federal Rules of Civil Procedure requires a court to enter summary judgment when the moving party establishes that it is entitled to judgment as a matter of law because no genuine dispute exists as to any material fact. See *Trent v Wade*, 776 F3d 368, 376 (5th Cir 2015). The Fifth Circuit holds that a fact is *material* if its resolution in favor of one party might affect the outcome of the lawsuit under governing law. *Sossamon v Lone Star State of Texas*, 560 F3d 316, 326 (5th Cir 2009) (citations omitted). And the Fifth Circuit holds that a *genuine dispute of material fact* exists "when the 'evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Nola Spice Designs LLC v Haydel Enterprises Inc*, 783 F3d 527, 536 (5th Cir 2015), quoting *Anderson v Liberty Lobby*, 477 US 242, 248 (1986).

A court reviewing a motion for summary judgment must draw all reasonable inferences in the light most favorable to the nonmoving party. *Connors v Graves*, 538 F3d 373, 376 (5th Cir 2008). The moving party typically bears the entire burden to demonstrate the absence of a genuine issue of material fact. *Nola Spice*, 783 F3d at 536 (citation omitted); see also *Celotex Corp v Catrett*, 477 US 317, 323 (1986). But when a motion for summary judgment by a defendant presents a question on which the plaintiff bears the burden of proof at trial, the burden shifts to the plaintiff to proffer summary judgment proof establishing an issue of material fact warranting trial. *Nola Spice*, 783 F3d at 536 (citations omitted). To meet this burden of proof, the evidence must be both competent and admissible at trial. *Bellard v Gautreaux*, 675 F3d 454, 460 (5th Cir 2012) (citations omitted).

3

The party opposing summary judgment must also identify specific evidence in the record and articulate precisely how that evidence supports their claim. *Willis v Cleco Corp*, 749 F3d 314, 317 (5th Cir 2014) (citations omitted). It is not enough to simply file an undifferentiated collection of exhibits. "If somewhere in a record there is evidence that might show a dispute of material fact, the district court needs to be pointed to that evidence as opposed to having to engage in an extensive search." *Hernandez v Yellow Transportation Inc*, 670 F3d 644, 654 (5th Cir 2012) (citations omitted).

    3.   Analysis

Webber brings claims of intentional discrimination, discriminatory retaliation, and hostile work environment. MD Anderson moves for summary judgment against them all.

    a.   Reduction-in-force discrimination claim

A plaintiff alleging intentional discrimination under Title VII may prove her case using either direct or circumstantial evidence. *McCoy v City of Shreveport*, 492 F3d 551, 556 (5th Cir 2007).

"Direct evidence is evidence, which if believed, proves the fact in question without inference or presumption." *Reilly v TXU Corp*, 271 F Appx 375, 379 (5th Cir 2008) (citations omitted). Where no direct evidence of discrimination is proffered, analysis proceeds under the burden-shifting framework set out in *McDonnell Douglas Corp v Green*, 411 US 792, 802–03 (1973). See also *McCoy*, 492 F3d at 556. Under that framework, a plaintiff must make a *prima facie* case of discrimination, after which the burden passes to the employer to provide a legitimate, nondiscriminatory reason for the adverse action. *McDonnell Douglas*, 411 US at 802–03. The burden returns to the plaintiff to prove pretext if the employer offers a reason. Id at 804.

Webber offers no direct evidence of discrimination that would prove her claims without inference. She instead asks the Court to infer from the behavior of her supervisors that MD Anderson discriminated against her. Dkt 1 at ¶ 6.1. As a first step, then, Webber must set out a *prima facie* case on her claim of discrimination.

4

MD Anderson asserts that the only adverse employment action at issue is its termination of Webber as part of an overall reduction-in-force plan. Dkt 29 at 16–17. Webber claims that there were "many other pretextual adverse employment actions." Dkt 38 at 7. But she only argues as to her termination—without disputing that MD Anderson undertook a reduction in force. Id at 7–10.

Webber's claim is thus for intentional discrimination in the implementation by MD Anderson of its reduction-in-force plan. The *prima facie* case for such a claim is very specific. Webber must show that:

- o *First,* she is a member of a protected class;
- o *Second,* she was adversely affected by her employer's decision;
- o *Third,* she was qualified to assume another position at the time of discharge; and
- o *Fourth,* there is sufficient circumstantial or direct evidence from which a factfinder may reasonably conclude that the employer intended to discriminate in reaching the adverse employment action, or others who were not members of the protected class remained in similar positions.

*Nichols v Loral Vought Systems Corp*, 81 F3d 38, 41 (5th Cir 1996); see also *Ortiz v Shaw Group, Inc*, 250 F Appx 603, 606 (5th Cir 2007).

MD Anderson doesn't contest the first two elements. But it argues as to the third that Webber has failed to allege or show that she was qualified to assume another position at the time of discharge. Dkt 29 at 18. It cites *Creaghe v Albemarle Corporation*, where the Fifth Circuit affirmed summary judgment on an age-discrimination claim for failure to produce evidence on qualification for another position. 98 F Appx 972, 975 (5th Cir 2004). The plaintiff in *Creaghe* had alleged that he was qualified for another, named position when he was fired. But his claim failed on summary judgment without evidence to support that conclusory assertion. Ibid.

5

Webber in response fails entirely to mention—much less present evidence of—her qualifications to assume another position. She argues only that she was qualified for her *current* position. Dkt 38 at 10; Dkt 1 at ¶¶ 5.18–20, 6.2 (complaint). But the requirement in a reduction-in-force context is a showing of qualification for *another* position at the time of discharge. *Nichols*, 81 F3d at 41. She also argues generally on the basis of *McDonnell Douglas*. Dkt 38 at 10–11. But the factors laid out in *Nichols* have long been held pertinent to the necessary *prima facie* analysis of such a reduction-in-force termination. See *Ortiz*, 250 F Appx at 606, citing *Amburgey v Corhart Refractories Corp, Inc*, 936 F3d 805, 812 (5th Cir 1991); see also *Nichols*, 81 F3d at 41, *Adams v Memorial Hermann*, 2018 WL 5886800, *6 (SD Tex).

Webber fails to establish her qualifications to assume another position at the time of discharge. This requires dismissal of her claim for intentional discrimination. The parties spend substantial parts of their briefs discussing evidence (or its lack) of pretext. The Court needn't reach these arguments because Webber hasn't established a *prima facie* case.

b.   Retaliation claim

Provided that there is no direct evidence, a claim for retaliation proceeds much the same way as a claim for intentional discrimination. That is, a retaliation claim also uses the *McDonnell Douglas* burden-shifting framework. See *Brown v Wal-Mart Stores East, LP*, 969 F3d 571, 577 (5th Cir 2020). The first step, then, requires the plaintiff to establish a *prima facie* case.

A *prima facie* case for retaliation requires the plaintiff to prove that:

- o   *First,* she engaged in a protected activity;
- o   *Second,* her employer took an adverse employment action against her; and
- o   *Third,* a causal link exists between the protected activity and the adverse employment action.

*Zamora v City of Houston*, 798 F3d 326, 331 (5th Cir 2015) (citations omitted).

MD Anderson doesn't contest the first and second elements. It challenges only the suggestion that a causal link exists between

Webber's EEOC complaint and the termination of her employment. Dkt 29 at 22–23. Establishing this causal link in the *prima facie* case is different than that required to prove pretext. The showing of pretext requires the plaintiff to show that the employer wouldn't have made the adverse employment action *but for* the protected conduct. For example, see *McDaniel v Temple Independent School District*, 770 F2d 1340, 1346 (5th Cir 1985). But the showing of the causal link between the protected conduct and the adverse action is "much less stringent." See *Long v Eastfield College*, 88 F3d 300, 305 n 4 (5th Cir 1996); see also *Starnes v Wallace*, 849 F3d 627, 635 (5th Cir 2017) (citing *Long* footnote four). Even so, the plaintiff must produce evidence that the final decision-makers knew about the protected activity. *Manning v Chevron Chemical Co*, 332 F3d 874, 883–84 (5th Cir 2003).

Webber filed an EEOC complaint in July 2016. Dkt 1 at ¶ 5.3. She was terminated in January 2017. Id at ¶ 5.5. Webber offers little other than this span of months as proof of her *prima facie* case. But the Fifth Circuit in *Strong v University Healthcare System, LLC* held that "temporal proximity" isn't sufficient by itself to establish causation—even if the time between the protected activity and the adverse employment action is "very close." 482 F3d 802, 807–08 (5th Cir 2007). And indeed, the Fifth Circuit there found that termination three-and-a-half months after the filing of an EEOC complaint wasn't of sufficient temporal proximity. Ibid.

The only other evidence offered by Webber is the deposition by Brittany Thompson. See Dkt 38 at 16. Thompson testified that Garcia, Hill, and Cynthia Gonzales (another employee at MD Anderson) told her on separate occasions that Webber frequently reported her coworkers to their supervisors. Dkt 38-11 at 6–11. Thompson also states that Garcia told her she wanted to have Webber fired. Id at 8. But Webber makes no specific connection between those statements and the termination of her employment. See Dkt 38 at 15–17. She offers no evidence that the evaluation team knew of her protected activity. Compare *Gollas v University of Texas Health Science Center at Houston*, 425 F Appx 318, 325 (5th Cir 2011). Webber at best establishes that Garcia reports to two members of the evaluation team, being

7

Smith and Williams. See Dkt 38-11 at 6. But Webber provides no evidence that Garcia (or Hill, or Gonzales) ever advocated to one of the members of the evaluation team that Webber be terminated.

To be clear, Webber isn't here pursuing a so-called *cat's-paw case*. In such a case, "if [an] employee demonstrates a co-worker with a retaliatory motive had influence over the ultimate decisionmakers, that co-worker's retaliatory motive may be imputed to the ultimate decisionmakers, thereby establishing a causal link between the protected activity and the adverse employment action." *Gollas*, 425 F Appx at 325 (citation omitted). Webber submits no evidence suggesting that Garcia, Hill, or Gonzales had any influence over anyone on the evaluation team.

MD Anderson also argues that Webber fails to show that its sponsored reason for terminating her employment—the organization-wide reduction in force—is a pretext for discrimination. This needn't be addressed where Webber fails to establish a *prima facie* case of retaliation. This claim must be dismissed.

### c. Hostile work environment claim

In addition to its prohibition of direct discrimination, Title VII "makes it unlawful for employers to require 'people to work in a discriminatorily hostile or abusive environment.'" *West v City of Houston, Texas*, 960 F3d 736, 741 (5th Cir 2020), *quoting Gardner v CLC of Pascagoula, LLC*, 915 F3d 320, 325 (5th Cir 2019). This claim requires Webber to show:

- o *First,* membership in a protected group;
- o *Second,* harassment;
- o *Third,* the harassment was based on an impermissible factor under Title VII;
- o *Fourth,* the harassment affected a term, condition, or privilege of employment; and
- o *Fifth,* the employer knew or should have known of the harassment yet failed to address it promptly.

*Hernandez*, 670 F3d at 654 (citations omitted).

MD Anderson challenges only the fourth element, arguing that Webber "fails to assert facts that come close to establishing

a severe and pervasive abusive working environment." Dkt 29 at 20–22. Argument of a conjunctive prerequisite—viz, conduct that is both severe *and* pervasive—states an incorrect standard.

To constitute a violation of Title VII, harassment must be "sufficiently severe *or* pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Ramsey v Henderson*, 286 F3d 264, 268 (5th Cir 2002) (emphasis added; citation omitted); see also *Royal v CCC & R Tres Arboles, LLC*, 736 F3d 396, 402–03 (5th Cir 2013). This is a broad inquiry that considers among other things "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Hernandez*, 670 F3d at 651, quoting *Ramsey*, 286 F3d at 268. The Fifth Circuit cautions district courts to avoid premature determination that harassment isn't sufficiently severe or pervasive. For example, see *Royal*, 736 F3d at 401–03; *Harvill v Westward Communications, LLC*, 433 F3d 428, 436–37 (5th Cir 2005). And so, the question at this stage is whether—construing the facts in favor of the plaintiff—no reasonable jury could find such harassment sufficiently severe or pervasive to alter the terms of Webber's employment. See *Royal*, 736 F3d at 404.

Webber provides evidence where she was the subject of improper discipline. Specifically, she offers evidence that her productivity and time spent on the phone weren't substantially different than those of her coworkers—although it led only to her discipline. Dkt 38-3 at 4–8; Dkt 38-6. She also submits some documentation for her claims that on several occasions she was improperly penalized for taking sick days and given less lunch time than others. Dkt 38-4; Dkt 38-5; see also Dkt 38-12 at 6. She further points to at least two instances where she was insulted—in quite stark and opprobrious terms—by Gonzales and Garcia directly about or related to her race. Dkt 38-11 at 12–15; Dkt 38-12 at 4–7. And she substantiates her claim that her coworkers—especially Garcia, Gonzales, Hill, and Melinda Pena (another MD Anderson employee)—regularly spoke Spanish to exclude her from work-related conversations. Dkt 38-11 at 15–17; Dkt 38-12 at 4, 7–8.

Some of this evidence is indeed concerning, if ultimately found to be true. This precludes summary judgment.

4. Conclusion

The motion for summary judgment by Defendant University of Texas MD Anderson Cancer Center is GRANTED IN PART and DENIED IN PART. Dkt 29.

The motion is GRANTED as to claims by Plaintiff Shapel Webber for intentional discrimination and for retaliation. Those claims are DISMISSED.

The motion is DENIED as to her claims regarding a hostile work environment.

SO ORDERED.

Signed on November 13, 2020, at Houston, Texas.

Hon. Charles Eskridge
United States District Judge